## UNITED STATES v. MACK et al.
### No. 76.

Circuit Court of Appeals, Second Circuit.
Nov. 5, 1934.

Leo J. Hickey, U. S. Atty., Emanuel Bublick, and Alfred C. McKenzie, Asst. U. S. Attys., all of Brooklyn, N. Y., and L. Y. Ray, Sp. Asst. Atty. Gen., for the United States.

Louis Halle, of New York City (Milton R. Kroopf, of New York City, on the brief), for appellees.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The United States sued Mack and the Surety Company upon a bond executed in the form prescribed by section 26, title 2, of the National Prohibition Act (27 USCA § 40), on the thirty-first day of October, 1930. The condition read as follows: "The said principal shall return the aforesaid conveyance or vehicle to the custody of the officer approving this bond on the day of the criminal trial to abide the judgment of the court." The occasion for the bond was a seizure in the preceding July by the Collector of Customs of New York, of the motor boat "Wanda," with a cargo of intoxicating liquors. Those in command of the boat were arrested at the same time, and on January 26, 1931, when brought to trial, pleaded guilty to the possession of the liquor and were sentenced. Mack neglected to return the "Wanda" on "the day of the criminal trial"—January 26—or at any other time, but no proceedings to collect the bond were taken until this action was begun on July 31, 1933. On April 12, 1934, the defendants moved to dismiss the complaint on the ground that judgment could not pass on such a bond after the repeal of the Eighteenth Amendment, and so the court ruled, relying on U. S. v. Chambers & Gibson, 291 U. S. 217, 54 S. Ct. 434, 78 L. Ed. 763, 89 A. L. R. 1510. There are said to be many such bonds held by the Treasury; and the question has been resolved in favor of the United States in the

three other cases where it has come up in District Courts. U. S. v. Biegert, 8 F. Supp. 884 (D. C. N. J. July 7, 1934); U. S. v. E. & S. Motor Transportation Co., 8 F. Supp. 844 (D. C. S. D. N. Y. June 1, 1934); Peoples Savings Bank v. U. S. (Sohn) —— (D. C. R. I.[1]). The theory is that although repeal of the Amendment ended all power to forfeit the boat, this action is not such a proceeding. Nothing is forfeited, no penalty is exacted; the obligee of the bond merely asks judgment upon a chose in action, now made absolute by the ending of the condition subsequent. Such a "right of action" once "vested" cannot be "divested" by the repeal of a statute or of a constitutional provision, which need not be invoked either to create or sustain it. The fact that except for the amendment the bond would not have been given, is irrelevant; it was executed for a consideration and became a contract by force of the common law alone.

This reasoning might be persuasive, if the plaintiff were right that the obligation needs no support in the Eighteenth Amendment and depends wholly on the common law. In that event the bond became collectible at once "on the day of the criminal trial," as soon as the principal defaulted in producing the boat. The condition subsequent having then lapsed, nothing stood in the way of immediate recovery; it contained nothing about the conviction of the accused smugglers; it was satisfied when the boat was not forthcoming. It is true that there was another condition, but as the two were in the conjunctive, the lapse of one made the lapse of the other unnecessary. The possibility that the bond might have been collected before conviction, if its meaning be as the plaintiff says, is by no means academic. Criminal trials are often long; bail at times becomes shaky; scire facias is a speedy remedy. A court, if urged, might well have issued the writ and passed judgment, before the prosecution came to an end. If the plaintiff be right, the bail would have had no defense. Yet he would be a hardy suitor who should say, if thereafter the prosecution failed, that he might keep the proceeds, and no court would sustain him. If so, the sovereign's continued power to confiscate must be somewhere implicit in the proceedings, and the action cannot depend wholly on the common law. It may be that the statute, so infuses the bond that no action can be brought at all, and no writ of scire facias issue, until conviction; just as no decree of forfeiture can pass until then. If so, it is an answer, for it shows that a statutory penal feature has been added to the common-law consensual face; surely there is no warrant for interposing such an unexpressed condition, if conviction be merely a fact, an event legally neutral, except that it must occur. On the other hand, it may be that the bond is collectible, though the obligee must restore the proceeds if the prosecution fails. That would even more clearly betray the confiscation which lurks behind, for it would be absurd to collect the proceeds after all power to keep them disappears. Less nicely considered, it is apparent that, since the bond was a mere substitute for the arrested boat, the position of the Treasury ought not to be amended by the substitution; that the purpose in allowing the owner to secure immediate possession of his property, must be read as subjecting him to no more onerous conditions than if he had left it under arrest. Whether it be vehicle or bond, a sovereign's power to confiscate must exist; that the suit sounds in contract, that a bond is a "chose in action," cannot disguise the fundamental character of what is done.

In accord is the ancient rule that until the bail is "fixed" he will be exonerated by anything which would discharge the principal from imprisonment were he surrendered; a fortiori by anything which would excuse his surrender. Beers v. Haughton, 9 Pet. 329, 358, 9 L. Ed. 145; Kelly v. Henderson, 1 Pa. 495. He is not necessarily "fixed" by a return of non est inventus to a capias ad satisfaciendum; he may exonerate himself by a surrender until the return day of the last scire facias, when after two "nihils" judgment can be entered. Mannin v. Partridge, 14 East 599. Yet the bond is estreated upon such a return to the ca. sa., as it was here by the principal's default. The decisions relied on by the plaintiff are quite different. Thus in Pac. Mail S. S. Co. v. Joliffe, 2 Wall. 450, 17 L. Ed. 805, the recovery was based, not on a penal, but a remedial, statute; said to create a "quasi-contract," though that term would scarcely be used to-day to describe the obligation. The right of a pilot to half-fees for visiting a ship which did not accept him, was certainly not a penalty; rather it was to compensate him for services thought beneficial to ships in the long run. Coombes v. Getz, 285 U. S. 434, 52 S. Ct. 435, 76 L. Ed. 866, turned upon a construction of the Constitution of California by which the liability of directors was held to be contractual. In Ettor v. Tacoma, 228 U. S. 148, 33 S. Ct. 428, 57 L. Ed. 773, the statute repealed was compensatory. In White v. Hart, 13 Wall. 646, 20 L. Ed. 685, and Osborn v. Nicholson,

[1] Oral; no opinion filed.

13 Wall. 654, 20 L. Ed. 699, the buyers of slaves, when sued for the price, set up emancipation as a defence. No more was determined than the liability of a buyer upon failure of title after performance. Our decision in U. S. v. Randall, 58 F.(2d) 193, held only that recovery upon a bond under section 26 should be limited to the value of the ship arrested; we did not suggest that the action was not pro tanto a forfeiture. When we said that it was intended as a substitute for the "damage" or "loss" of the United States, we spoke of the loss incurred by failing to collect the penalty, not of any loss involved in the sale or traffic in liquors. There was no such "loss"; forfeiture is a punishment.

Judgment affirmed.